UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Claude Gustinski, | ) | CA No. 9:24-cv-06042-JDA-MHC |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| M.V. Joseph, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Claude Gustinski ("Petitioner"), a federal inmate in the custody of the Federal

Bureau of Prisons ("BOP"), petitions the Court pro se for a writ of habeas corpus under 28 U.S.C.

§ 2241. ECF No. 1.

Respondent Warden M.V. Joseph ("Respondent") filed a Motion to Dismiss or, in the

Alternative, for Summary Judgment ("Motion for Summary Judgment"). ECF No. 25. Petitioner

filed a Response in Opposition, ECF No. 28, and Respondent timely filed a Reply, ECF No. 29.[1]

The Motion for Summary Judgment is ripe for review.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this

matter was referred to the undersigned for a Report and Recommendation. For the reasons that

follow, the undersigned recommends that the Motion be granted.

---

[1] On April 3, 2025, Petitioner filed a Motion to Strike Respondent's Reply, arguing that it was a "second reply" that was "out of time" by more than 30 days. ECF No. 30 at 2. Petitioner appears to misinterpret Respondent's Reply to Petitioner's Response in Opposition to the Motion to Dismiss or for Summary Judgment (ECF No. 29) as a second answer to the Petition. *See* ECF No. 30 at 2. Pursuant to Local Civil Rule 7.07, Respondent had seven days after Petitioner filed his Response to the Motion in which to file a Reply responding to Petitioner's Response. L. Civ. R. 7.07, D.S.C. (providing that "a party desiring to reply to matters raised initially in a response to a motion or in accompanying supporting documents shall file the reply within seven (7) days after service of the response"). Petitioner's Response was filed on March 17, 2025, and Respondent filed his Reply seven days later on March 24, 2025. Accordingly, the Reply was timely filed, and the undersigned recommends that the Motion to Strike be DENIED.

# I.  BACKGROUND

### A.  The First Step Act

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992) "Federal sentencing law permits federal prison authorities to award prisoners credit against prison time as a reward for good behavior." *Barber v. Thomas*, 560 U.S. 474, 476 (2010) (citing 18 U.S.C. § 3624(b)).

The First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("FSA"), was enacted on December 21, 2018. *See* 18 U.S.C. § 3632. Among other things, the FSA:

> charged the Attorney General with the development and public release of the Risk and Needs Assessment System (the "System") within 210 days of the enactment of the statute. 18 U.S.C. § 3632. Following its development and publication, the System is designed to be used to: determine an inmate's recidivism risk; assess the inmate's risk of violent or serious misconduct; determine the appropriate type and amount of evidence-based recidivism reduction ("EBRR") programming appropriate for each inmate; periodically reassess an inmate's recidivism risk; reassign an inmate to appropriate EBRR programs or productive activities ("PAs"); determine when to provide the inmate with incentives and rewards for successful participation in EBRR and PAs; and determine when the inmate is ready to transfer into prerelease custody or supervised release. 18 U.S.C. § 3632(a). The System provides guidance on the type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs. 18 U.S.C. § 3632(b). The System is also intended to provide information on the best ways the BOP can tailor programs to the specific criminogenic needs of an inmate so as to effectively lower each inmate's risk of recidivism. 18 U.S.C. § 3632(b). The statute permits an eligible inmate who successfully completes EBRR programming or PAs to earn time credits to be applied toward time in prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(A).

*Hill v. Knight*, No. 2:21-cv-00103-SAL-MGB, 2021 WL 5605592, at *3 (D.S.C. Sept. 14, 2021) (quoting *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020)), *report and recommendation adopted,* 2021 WL 5598954 (D.S.C. Nov. 30, 2021).

All sentenced inmates receive both a risk and needs assessment. *See* BOP Program Statement 5410.01 at § 5, First Step Act of 2018-Time Credits: Procedures for Implementation of

18 U.S.C. § 3632(d)(4), *available at* https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (last visited June 20, 2025). The Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") is the recidivism risk assessment tool and part of the BOP's FSA-approved Risk and Needs Assessment System. *Id.* The PATTERN tool is completed during the inmate's Initial Classification, where he is assigned an initial recidivism risk level of Minimum, Low, Medium, or High. *Id.* Inmates are reassessed for both risk level and needs at each regularly scheduled Program Review throughout the remainder of the inmate's incarceration at a BOP institution. *Id.*

### B. Relevant Facts Related to Petitioner

Petitioner is an inmate formerly incarcerated at the Federal Correctional Institution ("FCI") in Bennettsville, South Carolina. ECF No. 1. On May 6, 2025, he transferred to a Residential Reentry Center ("RRC") in Florida. *See* ECF No. 31. His projected release date, via 18 U.S.C. § 3621(e) conditional release and the FSA, is August 14, 2026. *See* ECF No. 25-1, Respondent's Ex. 1, Declaration of J. Carter.

### 1. Petitioner's 2022 Criminal Charges and Supervised Release Violation

Petitioner was on supervised release in the Southern District of Florida when he engaged in new criminal conduct and violated the terms of his supervision. *See* PACER, Case No. 0:09-cr-60265 (S.D. Fla.). He was arrested in April 2022, his supervised release was revoked, and he was sentenced on July 8, 2022, to a term of 18 months' imprisonment for supervised release violation. *See id.*, ECF No. 74, Judgment in a Criminal Case for Revocation; *see also* ECF No. 25-1, Carter Decl., Att. A. Prior to his sentencing in the revocation case, Petitioner was charged for drug and firearm offenses by Criminal Complaint on May 12, 2022. *See* PACER, Case No. 0:23-cr-60067, Southern District of Florida. On March 30, 2023, he was later charged by Information for drug and firearms offenses. *Id.* Petitioner was sentenced on March 26, 2024, to 42 months' imprisonment

3

for violation of 21 U.S.C. § 846, Conspiracy to Possess with Intent to Distribute Five Grams or More of Methamphetamine, and 18 U.S.C. §§ 922(g)(1) and 924(e), Possession of a Firearm and Ammunition by a Convicted Felon.[2] *See* PACER, Case No. 0:23-cr-60067, Southern District of Florida, ECF No. 49, Judgment in a Criminal Case. BOP aggregated the terms of imprisonment and computed the sentence as beginning on July 8, 2022. *See* ECF No. 25-1, Carter Decl., Att. A.

    2.  <u>Petitioner's Detention History Since April 2022</u>

    Petitioner was arrested and detained in United States Marshals Service ("USMS") custody in the Broward County Main Jail in Fort Lauderdale, Florida, beginning on April 21, 2022. ECF No. 25-2 at 1, 8. He was sentenced on his Supervised Release Violation case on July 8, 2022, and remained at Broward County Jail until November 9, 2023. *Id.* On November 9, 2023, the USMS transferred Petitioner to the Federal Detention Center ("FDC") in Miami, Florida, as a pretrial inmate. *Id.* On February 15, 2024, the USMS moved Petitioner back to Broward County Main Jail, and he was sentenced for drug and firearms offenses on March 26, 2024. *Id.* On March 28, 2024, the USMS moved Petitioner back to FDC Miami as a holdover. *Id.* Thereafter, Petitioner was moved to Tallahassee as a holdover on May 14, 2024, and then to USP Atlanta as a holdover on May 23, 2024. *Id.* at 1. He arrived at his designated BOP facility, FCI Bennettsville, on June 6, 2024. *Id.*

    On June 12, 2024, Petitioner's Unit Team utilized the PATTERN tool to assess his recidivism risk, which was LOW. ECF No. 25-2 at 2. On June 29, 2024, the Unit Team conducted a Program Review, which shows they received Petitioner for FSA eligibility on June 28, 2024, and deemed him eligible to receive FSA time credits as of June 6, 2024. *Id.* Petitioner's PATTERN

---

[2] Petitioner filed a "Motion to Correct Sentence" in his criminal case on December 26, 2024, alleging BOP has miscalculated his sentence. *See* PACER, Case No. 0:23-cr-60067, Southern District of Florida, ECF No. 51. As of July 3, 2025, the motion is still pending. *See id.*

score was reassessed in December 2024, at which time his recidivism risk was LOW. *Id.* On May 6, 2025, Petitioner transferred to an RRC in Florida. *See* ECF No. 31.

### C. Issues in the Petition

Petitioner filed the instant action on October 23, 2024, challenging his calculated PATTERN score and alleging that the BOP failed to award and apply a portion of his FSA time credits. ECF No 1. He specifically alleges that BOP staff are calculating his PATTERN score using his criminal history points from his previous Presentence Investigation Report (PSR), rather than his newest PSR for his current conviction. He alleges staff should be calculating his PATTERN score with 6 criminal history points, rather than 11, which would result in a lower PATTERN score. ECF No. 1-2. He further alleges that the BOP failed to award him FSA time credits he should have earned prior to transferring to his BOP-designated facility (FCI Bennettsville).

## II.      LEGAL STANDARDS

### A. Summary Judgment Standard[3]

Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the party seeking summary judgment shoulders the initial burden of demonstrating to the Court that there is no genuine issue of material fact. *Id.* at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.

---

[3] Respondent moved under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. ECF No. 25. Because the parties submitted, and the undersigned considered, matters outside of the Petition, Respondent's Motion has been treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Under this standard, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, although the Court views all the underlying facts and inferences in the record in the light most favorable to the non-moving party, the non-moving "party nonetheless must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson*, 477 U.S. at 256). That is to say, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory or speculative allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must provide evidence of every element essential to his action on which he will bear the burden of proving at a trial on the merits. *Celotex Corp.*, 477 U.S. at 322.

### B.  Habeas Corpus

Under established local procedure in this judicial district, a careful review has been made of this Petition pursuant to the Rules Governing Section 2254 Proceedings for the United States District Court,[4] the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and other habeas corpus statutes. Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is

---

[4] The Rules Governing Section 2254 are applicable to habeas actions brought under § 2241. *See* Rule 1(b), Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254.

charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The primary means of attacking the validity of a federal conviction and sentence is through a motion pursuant to 28 U.S.C. § 2255, while a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. *See United States v. Little*, 392 F.3d 671, 678–79 (4th Cir. 2004).

A petitioner may bring a petition for a writ of habeas corpus under § 2241 if he is "attack[ing] the computation and execution of the sentence rather than the sentence itself." *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989) (per curiam); *see also Diaz v. Warden, FCI Edgefield*, No. 4:17-cv-00093-RBH, 2017 WL 2985974, at *2 (D.S.C. July 13, 2017) (noting a § 2241 petition "is the proper means for a federal prisoner to challenge the BOP's sentencing calculations"). A § 2241 petition challenging the execution of a federal prisoner's sentence generally addresses "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention[,] and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see also Manigault v. Lamanna*, No. 8:06-047-JFA-BHH, 2006 WL 1328780, at *1 (D.S.C. May 11, 2006) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, such as parole matters, computation of sentence by prison officials, prison disciplinary actions, and prison transfers."). A § 2241 petition must be brought against the warden of the facility where the prisoner is being held, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), and "in the district of confinement rather than in the sentencing court," *Miller*, 871 F.2d at 490. *See also* 28 U.S.C. § 2242.

### III.    <u>DISCUSSION</u>

Respondent argues that the § 2241 Petition should be dismissed because: (1) Petitioner failed to exhaust his administrative remedies before filing the Petition; and (2) Petitioner's FSA time credits have been applied properly, such that he is not entitled to relief. ECF No. 25. Upon review, the undersigned concludes that Respondent's Motion should be granted and the Petition dismissed.

### A.  Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies before seeking habeas review under § 2241. *See, e.g.*, *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–91 (1973) (requiring exhaustion in a § 2241 matter); *Timms v. Johns*, 627 F.3d 525, 530–33 (4th Cir. 2010) (same); *McClung v. Shearin*, 90 F. App'x. 444, 445 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *Miller v. Clark*, 958 F.2d 368, 1992 WL 48031, at *1 (4th Cir. 1992) (unpublished table opinion) ("Federal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies."); *Henderson v. Warden, Edgefield Satellite Prison Camp*, No. 2:09-cv-01599-RBH, 2009 WL 3317149, at *2 (D.S.C. Oct. 14, 2009) ("It is well settled that a federal prisoner is required to exhaust his administrative remedies within the BOP before filing an action pursuant to § 2241.").

Any arguments not advanced at each step of the administrative appeal are procedurally defaulted. *See Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir. 2002). Moreover, if a prisoner cannot obtain an administrative remedy because of his failure to timely appeal at the administrative level, then the prisoner has procedurally defaulted his § 2241 claim. *See, e.g.*, *Moscato v. Fed.*

*Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996), *cited with approval in Watkins v. Compton*, 126 F. App'x 621, 622 (4th Cir. 2005).

As exhaustion under § 2241 is not statutory, but rather is a judicially created requirement, some courts have held that the exhaustion requirement may be waived for discretionary reasons, such as where exhaustion would be futile. *Brown v. Warden of FCI Williamsburg*, C/A No. 8:19-546-HMH-JDA, 2019 WL 1780747, at *2–3 (D.S.C. Mar. 25, 2019); *report and recommendation adopted,* 2019 WL 1773382 (D.S.C. April 23, 2019). However, the futility exception does not apply simply because an inmate believes he will not be granted relief through the administrative process. *See Torres v. Martinez*, C/A No. 3:09cv1070, 2009 WL 2487093, at *4 (M.D. Pa. Aug. 12, 2009) ("Exhaustion of administrative remedies is not rendered futile just because a prisoner anticipates he will be unsuccessful in his administrative appeals."). Rather, a petitioner's failure to exhaust administrative remedies may be excused only upon a showing of cause and prejudice. *McClung*, 90 F. App'x at 445; *Groomes v. Warden*, C/A No. 6:09-1750-PMD, 2010 WL 738306, at *5 (D.S.C. Mar. 3, 2010); *see also Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) ("Cause and prejudice may excuse a procedural default of administrative remedies.").

1.   The BOP's Administrative Grievance Process

The BOP has a four-step administrative grievance process, including an informal resolution process and a three-tier formal administrative remedy process through which an inmate may seek formal review of any issue that relates to any aspect of his confinement. *See* 28 C.F.R. §§ 542.10 *et seq*.; BOP Program Statement (P.S.) 1330.18, Administrative Remedy Program. The grievance process consists of three levels of review: institutional, regional, and national. *See id.*

First, an inmate must seek to informally resolve any complaint relating to his confinement at the institution level. 28 C.F.R. § 542.13. Next, if the complaint cannot be resolved informally,

the inmate may file a formal written Administrative Remedy Request (on a BP-9 form) with the Warden, which must be filed within twenty calendar days after the date upon which the basis for the request occurred. *Id.* § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id.*

Then, if the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director (a "Regional Appeal"). *Id.* § 542.15. A Regional Appeal must be submitted on a BP-10 form within twenty days of the date the Warden signed his response. *Id.*

Finally, if the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the General Counsel (a "Central Office Appeal"). *Id.* A Central Office Appeal must be submitted on a BP-11 form within thirty days of the date the Regional Director signed his response. *Id.* A Central Office Appeal is the final level of agency review. *Id.*

"If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." *Id.* § 542.18. "Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id.* (further providing that the response time may be extended once and the inmate shall be informed in writing of the extension). "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

All formal administrative remedy requests are logged into SENTRY, the BOP's online inmate information system, and given a unique identifying number. ECF No. 25-1, Carter Decl. An extension is added to the number which denotes the level at which the claim is filed. *Id.* Subsequent appeals of an issue will have the same identification number with a different extension identifying the level where filed. *Id.* The extension "-F1" indicates the filing was at the institution

or field level. *Id.* The extension "-R1" indicates the filing was at the regional level. *Id.* The extension "-A1" indicates the filing was at the national level. *Id.* If an appeal is rejected and re-filed at the same level, perhaps correcting the identified deficiencies, then the number will change but the letter will remain the same. *Id.* For example, the extension "-A2" indicates the appeal was rejected at the central office level once and the inmate has re-filed, presumably after correction of the noted deficiencies.

2. <u>Evidence Related to Petitioner's Exhaustion Attempts</u>

On June 18, 2024, Petitioner made an informal resolution attempt, complaining, "My custody classification score is wrong, as well as my pattern score for first step credit is scored wrong. I have zero detainers and 6 criminal history points. Ms. Wren does not want to re-score me. I feel I have the right to be scored correctly." ECF No. 1-1 at 1. On June 26, 2024, Petitioner submitted a Request to Staff directed at Mr. McCorkle, in which he complained regarding his "Inmate Custody and Classification points, as well as [his] First Step Act Pattern score," and argued that the wrong PSR was used to calculate his criminal history points. ECF No. 1-1 at 3. On July 2, 2024, Petitioner requested a BP-9 form so he could file a complaint with the Warden. *Id.* at 5.

On July 4, 2024, Petitioner submitted an informal Request to Staff directed to the Warden, in which Petitioner informally complained that his PATTERN score was incorrect "due to the use of an erroneous Pre Sentence report" and that "the BOP has failed to apply FSA time credits earned between July 7, 2022 through June 5, 2024." ECF No. 1-1 at 2.[5] Four days later, on July 8, 2024, Petitioner signed a Formal Request for Administrative Remedy (BP-9) addressed to the Warden, in which he repeated verbatim the complaint he made in the July 4 informal request:

---

[5] This July 4 informal Request to Staff appears to be the first time Petitioner complained regarding FSA time credits. The prior requests were focused on custody points and his PATTERN score.

> Warden Joseph, I send this e-mail request with respect. Sir, it is my belief that I am in custody in violation of the Constitution and Laws of the United States. Specifically, I have been given an improper First Step Act Pattern Score due to the use of an erroneous Pre-Sentence Report. As well, my pattern score utilizing an erroneous Criminal History score generates an incorrect recidivism score. In addition, the BOP has failed to apply FSA time credits earned between July 8, 2022, through June 5, 2024. I was sentenced on July 8, 2022 to an 18 month term of imprisonment in the Southern District of Florida. I have been in the custody of the U.S. Marshal/Federal authorities for the entire duration of my confinement. . . . I am requesting that I be scored correctly and that I be given FSA credits beginning on July 8, 2022, through June 5, 2024. After speaking with the Unit Team, it is my position to pursue my grievance through the administrative remedy process.

ECF No. 1-1 at 4. Petitioner hand-delivered the Formal Request to C-1 Unit Manager McCorkle on July 9, 2024. *See* ECF No. 1-1 at 8 ("I submitted a BP-9 to Unit Manager/Case manager coordinator Mr. McMcorkle on July 9, 2024 by hand delivering it to him."); *but see* ECF No. 8 at 2, Decl. of Petitioner (stating that the BP-9 was given to "staff" on July 8, 2024).

The Warden responded to Petitioner's July 4 informal request on July 25, 2024, by instructing Petitioner to speak with his Case Manager to discuss this concern and to request a BP-8 from his counselor if he is not satisfied with the response. ECF No. 1-1 at 4.

SENTRY, the BOP's electronic inmate record system, shows that Petitioner filed formal Remedy ID No. 1206930-F1 at the institution level on July 26, 2024, related to FSA eligibility. ECF No. 25-1 at 22, Carter Decl., Attachment B, SENTRY Inmate Administrative Remedy Generalized Retrieval; *see also* ECF No. 1-1 at 12 (Warden's Office Receipt dated July 26, 2024, assigning case number 1206930-F1 regarding Petitioner's "FSA Eligibility" remedy request). It appears that Remedy ID No. 1206930-F1 is the same Formal Request for Administrative Remedy that Petitioner gave to McCorkle on July 9, 2024, but it was not entered into SENTRY until July 26, 2024, and Petitioner did not receive a copy of the Warden's Office Receipt for Remedy ID No. 1206930-F1 until July 30, 2024. *Id.* at 13 (complaining that the receipt was dated July 26, despite the fact that Petitioner had handed the BP-9 to staff on July 9, 2024); *see* ECF No. 8 at 3, Decl. of

Petitioner (stating that Petitioner received the receipt "on July 30th, 2024 at approximately 3:30 p.m."). The Warden's response to Remedy ID No. 1206930-F1 was due on August 15, 2024. ECF No. 25-1 at 22; *see* 28 C.F.R. § 542.18(a) (stating that an accepted remedy is considered filed on the date it is logged into the Administrative Remedy Index as received, and that response shall be made by the Warden within 20 calendar days).

Petitioner signed and dated a Regional Administrative Remedy Appeal on July 30, 2024, in which he stated:

> After the informal resolution (BP-8) was not answered in writing and returned to me, I then filed a BP-9 to Warden Joseph on July 9, 2024. After numerous requests to staff and the passing of 20 calendar days with still No Response I continue the administrative remedy process at the Regional level with the following: Specifically, I have been given an improper First Step Act PATTERN Score due to the use of the wrong Pre-sentence report. As well, my PATTERN Score utilizing an erroneous criminal history score generates an incorrect recidivism score. In addition, the BOP has failed to apply FSA Time Credits earned between July 8, 2022, through June 5, 2024. . . . I am requesting that I be scored correctly (with 6 criminal history points instead of 11) and that I be given FSA Credits beginning on July 8, 2022, through June 5, 2024.

ECF No. 1-1 at 9–10. This Regional Appeal was mailed on August 1, 2024. *Id.* at 11. Despite acknowledging that he received the receipt with the case number for the accepted Remedy Request to the Warden on July 30, 2024, Plaintiff avers that he did not include a case number on his Regional Appeal because "the appeal to Warden Joseph went 20 calendar days without answer." ECF No. 8 at 3.

SENTRY records indicate that the Regional Office received an appeal from Petitioner on August 5, 2024, in which Petitioner "allege[d] custody points are incorrect." ECF No. 25-1 at 22. This Regional Appeal was assigned Remedy ID No. 1208289-R1 and was rejected on August 7, 2024, for being filed at the wrong level. *Id.*

The Warden's response to Remedy No. 1206930-F1 (for Petitioner's BP-9 Formal Request for Administrative Remedy dated July 8, 2024, and accepted on July 26, 2024) was due on August

15, 2024—ten days *after* Plaintiff's appeal in Remedy No. 1208289-R1 was filed in the Regional Office. However, the Warden did not respond by the August 15, 2024 deadline. Petitioner never filed an appeal of Remedy No. 1206930-F1 with the Regional Office.

Petitioner signed and dated a Central Office Administrative Remedy Appeal on September 5, 2024, in which he stated:

> Petitioner has not been awarded ANY FSA (First Step Act) credit prior to 6-6-24, which is the date he was delivered to the institution to begin serving his sentence. Petitioner avers he is entitled to earn FSA credits retroactively back to December 21, 2018, the date the First Step Act was enacted. . . . Bennettsville FCI Unit Team utilized the wrong pre-sentence report to generate an er[r]oneous "FSA Recidivism Risk Assessment; PATTERN Score." I was wrongly scored with eleven (11) criminal history points. Review of my pre-sentence report reflects I have six (6) criminal history points."

ECF No. 1-1 at 15. Petitioner's Central Office Appeal was received on September 11, 2024, and was assigned Remedy ID No. 1206930-A1. ECF No. 1-1 at 23. The Central Office issued a Rejection Notice on September 25, 2024, for being filed at the wrong level, explaining that Petitioner should have filed his appeal at the Regional Office. *Id.*; *see* ECF No. 25-1 at 23. Petitioner received the Rejection Notice around October 15, 2024. ECF No. 1-1 at 23.

By response signed and dated October 1, 2024, the Warden responded to Petitioner's Remedy ID No. 1206930-F1 (dated July 8 and accepted on July 26). ECF No. 28-3. The Warden denied Petitioner's Request for Administrative Remedy and stated that Petitioner could appeal the decision to the Southeast Regional Office within 20 calendar days of the date of the response. *Id.* ("Records indicate your Federal Time Credits ha[ve] been evaluated consistent with policy. . . . The criminal history points reflect[ed] on the FSA Recidivism Risk Assessment form are correct."). The remedy was closed on October 2, 2024. ECF No. 25-1 at 22. Petitioner did not appeal the denial of Remedy ID No. 1206930-F1 to the Regional Office.

Petitioner filed his Petition with this Court on October 23, 2024. ECF No. 1. The next day, Petitioner re-filed his appeal at the Central Office level by filing Remedy ID No. 1206930-A2 on October 24, 2024. The Central Office rejected the appeal that same day for being filed at the wrong level. *Id.* ("There is no evidence in Sentry you submitted A 10 to the Region. You should get a memo from staff and refile you[r] appeal to the SERO [Southeastern Regional Office].") There is no evidence that Petitioner re-filed his appeal to the Regional Office.

3.  <u>Analysis</u>

Respondent argues that Petitioner filed his Petition without fully exhausting his administrative remedies. ECF No. 25. Petitioner contends that he timely exhausted his administrative remedies at every level of appeal. ECF No. 28 at 1–15. Upon review, the undersigned agrees with Respondent.

Petitioner cites 28 C.F.R. § 542.18 for the proposition that the "Warden <u>MUST</u> respond in writing within 20 days" to a BP-9 Request for Administrative Remedy. ECF No. 28 at 4. However, in arguing that the 20-day period began to run on the date he gave the BP-9 form to staff, Petitioner disregards the portion of this rule that governs *when* the 20-day period begins to run: "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. *Once filed*, response shall be made by the Warden or CCM within 20 calendar days[.]" 28 C.F.R. § 542.18(a) (emphasis added). Petitioner incorrectly argues that the 20-day period began to run at the time he gave the BP-9 "to staff," either on July 8 or 9, 2024. *See* ECF No. 28 at 4. However, the evidence in the record—and provided to Petitioner by July 30, 2024, via receipt from the Warden—is that the BP-9 was "considered filed" on July 26, 2024, the date the BP-9 was logged as received, at which point the 20-day period began to run. *See* 28 C.F.R.

§ 542.18(a). Petitioner's argument to the contrary is without merit.[6]

By July 30, 2024, Petitioner had received written notice that the Warden (1) had accepted

his Request for Administrative Remedy and logged it into the Administrative Remedy Index

---

[6] Petitioner maintains that the Court should disregard the plain language of 28 C.F.R. § 542.18(a) in determining when his BP-9 was filed and instead apply the "prison mailbox rule" to determine that the BP-9 was filed, and the Warden's 20-day response period began to run, the moment he handed his BP-9 form to staff. ECF No. 28 at 10–13. However, Petitioner acknowledges that "federal courts have concluded that the 'prison mailbox rule' does not apply to the BOP administrative remedy/appeal process because of the language of the regulation, BOP policy, and case law." ECF No. 28 (collecting cases); *see also Price v. Carter*, No. CV SAG-24-1444, 2024 WL 4979487, at *4 (D. Md. Dec. 4, 2024) ("[T]he BOP's Administrative Remedy Procedure provides that 'IF accepted, a Request to appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.' 28 C.F.R. 542.18; *see also* BOP Program Statement 1330.18, Administrative Remedy Program, at Section 12, p. 9 (Jan. 6, 2014) available at https://www.bop.gov/policy/progstat/1330_018.pdf (last visited Nov. 25, 2024). As such, there is simply no indication that Price is entitled to benefit of the prison mailbox rule and therefore the Court cannot say that his initial appeal was timely."); *Slusser v. Holzapfel*, No. 5:21-CV-00544, 2023 WL 8817575, at *4 (S.D.W. Va. Aug. 7, 2023) (citing 28 C.F.R. § 542.18 and recommending a finding "that the 'prison mailbox rule' does not apply in the context of a prison administrative remedy process"), *report and recommendation adopted,* No. 5:21-CV-00544, 2023 WL 8813921 (S.D.W. Va. Dec. 20, 2023).

Nonetheless, Petitioner requests that the Court apply the decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) "to the BOP's regulation 28 C.F.R. § 542.18(a) and deem it to be a <u>non-permissible</u> construction of the statute as it establishes an arbitrary & capricious indefinite timeframe for administrative action." ECF No. 28 at 12; *id.* at 15 (requesting that the Court find 28 C.F.R. § 542.18(a) to be "invalid"). *Loper Bright* overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which had required courts to defer to an agency's reasonable interpretation of an ambiguous statute. *See Chevron*, 467 U.S. at 844. Under *Loper Bright*, courts may not defer to an agency's interpretation of a statute simply because a statute is ambiguous but rather "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412. Here, Petitioner does not identify any particular statute that he claims is ambiguous, such that the undersigned is not persuaded that *Loper Bright* is applicable. Moreover, the facts in this case do not support a finding that 28 C.F.R. § 542.18 establishes an indefinite timeframe for administrative action. The Warden received and accepted Petitioner's BP-9 form on July 26, 2024, within 20 days of when Petitioner states he gave it to "staff" on July 8 or 9, 2024. Petitioner received a written receipt just four days later, on July 30, 2024, informing him that the BP-9 had been received and filed as of July 26, 2024; of the assigned Remedy ID number; and of the deadline for the Warden to respond (by August 15, 2024). These administrative actions, all of which took place in the same month that Petitioner states he handed his BP-9 form to staff, do not support a finding of an arbitrary and capricious indefinite timeframe.

(SENTRY) on July 26, 2024; (2) had assigned it Remedy No. 1206930-F1; and (3) had calculated the Warden's 20-day response deadline to be August 15, 2024. *See* ECF No. 1-1 at 12; *see also* 28 C.F.R. § 542.18(a). Nonetheless, the undisputed evidence shows that Petitioner did not appeal to the Regional Office the Warden's denial of Remedy No. 1206930-F1—either after the Warden's August 15 response deadline ran without a response or an extension, or after the Warden formally denied No. 1206930-F1 via a 3-page written response dated October 1, 2024. Instead, Petitioner twice filed appeals of Remedy No. 1206930-F1 directly to the Central Office, twice resulting in rejections and instructions for him to file his appeal at the Regional Office level. It is undisputed that Petitioner did not do so.

Indeed, the only record of an appeal by Petitioner to the Regional Office is the appeal in Remedy No. 1208289-R1 (regarding "I/M allege[s] custody points are incorrect"). This appeal was premature, however, because it was received and rejected before the Warden's August 15 deadline to respond to Remedy No. 1206930-F1 had expired. ECF No. 25-1 at 22. There is no evidence that Petitioner made any other appeal to the Regional Office.

On this record, the undersigned agrees with Respondent that Petitioner failed to exhaust his administrative remedies before he filed the instant Petition with this Court on October 23, 2024. Moreover, Petitioner has not demonstrated any exceptional circumstances that excuse his failure to exhaust administrative remedies before seeking habeas relief in this Court pursuant to 28 U.S.C. § 2241. *See supra*, footnote 4 (rejecting Petitioner's unlimited timeframe argument); ECF No. 28 at 13 (arguing that "the 'unlimited timeframe for administrative action' . . . suffice[s] the cause and prejudice requirement"); *see also McClung*, 90 F. App'x at 445 (noting a petitioner's failure to exhaust administrative remedies may be excused only upon a showing of cause and prejudice); *see also Patel v. Warden*, No. 8:22-CV-2027-RMG-JDA, 2022 WL 3030781, at *4 (D.S.C. July

17

7, 2022) ("Because Petitioner is challenging the BOP's calculation of his release date, he must exhaust his administrative remedies before bringing an action in this Court. Indeed, this is precisely the type of case which requires a fully developed administrative record so that the Court may evaluate the BOP's calculation of time to be credited to Petitioner's sentence."), *report and recommendation adopted,* No. 8:22-CV-2027-RMG, 2022 WL 3030738 (D.S.C. Aug. 1, 2022).

Because Petitioner has failed to exhaust his administrative remedies, the Petition should be dismissed without prejudice and without reaching the merits of the Petition. *See King v. Joseph*, No. CV22301847HMHMGB, 2023 WL 6626630, at *4 (D.S.C. Sept. 14, 2023) (finding, in a case where petitioner asserted claims for FSA Time Credits, that petitioner failed to demonstrate cause to excuse the exhaustion requirement, such that the petition should be dismissed), *report and recommendation adopted,* No. 2:23-1847-HMH-MGB, 2023 WL 6626160 (D.S.C. Oct. 11, 2023); *Wright v. Warden of Edgefield FCI*, No. 8:21-CV-0388-JD-JDA, 2021 WL 2270011, at *4 (D.S.C. Mar. 31, 2021) (recommending dismissal without prejudice for failure to exhaust administrative remedies in a case asserting claims for earned time credits under the FSA), *report and recommendation adopted,* No. 8:21-CV-0388-JD, 2021 WL 2269960 (D.S.C. June 2, 2021).

### B.  Alternatively, the Petition Should Be Denied on the Merits

Even if the Court were to reach the merits of the Petition, the undersigned would still recommend that it be dismissed.

As to Petitioner's argument that the wrong PSR was used in calculating his PATTERN score, Petitioner "has not shown that the BOP miscalculated his recidivism risk level, nor would he be able to have such an error reviewed by a court." *See Bennett v. Warden, FCI Beckley*, No. 5:23-CV-00477, 2024 WL 3433952, at *3 (S.D.W. Va. June 18, 2024), *report and recommendation adopted,* No. 5:23-CV-00477, 2024 WL 3432619 (S.D.W. Va. July 16, 2024).

The undisputed evidence before the Court shows that Petitioner's PATTERN score would result in a LOW risk level regardless of whether his criminal history points were 11 (using the older PSR) or 6 (using the newer PSR). ECF No. 25-2 at 2. Moreover, "several courts [in the Fourth Circuit] have found that PATTERN scores and recidivism risk levels are not subject to judicial review." *Bennett*, 2024 WL 3433952, at *4 (collecting cases); *see Mohamed v. Warden*, No. 5:24-CV-138, 2024 WL 5319183, at *3 (N.D.W. Va. Dec. 10, 2024) ("[T]his Court need not address the merits of the initial score of 'Medium' because the undersigned agrees with respondent that the BOP's determinations of PATTERN Score are not subject to judicial review."), *report and recommendation adopted sub nom. Mohamed v. Warden, USP Hazelton*, No. 5:24-CV-138, 2025 WL 73251 (N.D.W. Va. Jan. 10, 2025); *Felton v. Janson*, No. 2:23-CV-04657-BHH-MGB, 2024 WL 4186071, at *5 (D.S.C. May 15, 2024) ("[T]he calculation of Petitioner's risk classification score is a decision entirely within the discretion of the BOP."), *report and recommendation adopted,* No. 2:23-CV-4657-BHH, 2024 WL 3982834 (D.S.C. Aug. 29, 2024); *Hicks v. Heckard*, No. 5:23-cv-00581, 2024 WL 833190, at *6 (S.D.W. Va. Feb. 1, 2024) ("[T]he parameters used to determine the PATTERN risk assessment are entirely within the discretion of the BOP and are not reviewable by [a federal district court]."), *report and recommendation adopted,* 2024 WL 818472 (S.D.W. Va. Feb. 27, 2024); *see also* 18 U.S.C. §§ 3621, 3624, 3625;[7] *Wilson*, 503 U.S. at 335 (explaining that only the Attorney General, acting through the BOP, may administer a

---

[7] As the *Bennett* court explained,

> 18 U.S.C. § 3625 seems to prohibit judicial review of a prisoner's PATTERN score or recidivism risk level. This statute excludes from judicial review "any determination, decision, or order" made under Chapter 229, subchapter C— §§ 3621–3626. This subchapter includes the implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h), and the BOP's eligibility determinations with respect to the application of FSA time credits. 18 U.S.C. § 3624(g)(1).

2024 WL 3433952, at *4.

federal inmate's sentence, including where an inmate serves his sentence as well as time credit). Accordingly, even if Petitioner could demonstrate an error in his PATTERN score, such error would not be subject to judicial review.

As to Petitioner's contention that he should be awarded FSA credits for the time between his initial sentencing on July 8, 2022, and his arrival at his BOP-designated facility on June 6, 2024, Petitioner has not demonstrated that he is entitled to relief.

Petitioner has submitted a sworn declaration in which he represents that while he was incarcerated at a county jail after his sentencing for the supervised release violation on July 8, 2022, he worked as an orderly, read books, prayed daily, visited with family via phone and video, and participated in the law library program. ECF No. 28-1 at 2–4. Petitioner further represents that during his time at the FDC Miami he worked as an orderly, went to all in-unit services, participated in daily bible studies, attended weekly Alcoholics Anonymous and Narcotics Anonymous group meetings, took the FSA "Risk and Needs Survey" on the Trulinks computer, requested to participate in FSA classes, and was waitlisted for Anger Management. *Id.* at 3–5. Petitioner asserts that these events can be verified through video surveillance at the Broward County Jail and FDC Miami. *Id.* at 5.

The undersigned finds the facts in this case to be analogous to those in a case recently decided in the Southern District of Indiana. In *Jackson v. Wadas*, No. 2:25-CV-00151-JPH-MJD, 2025 WL 1676837 (S.D. Ind. June 13, 2025), the petitioner "represented that, while he was incarcerated at a county jail after sentencing, he participated in classes and worked as an orderly." *Id.* at *5. The petitioner maintained that he was engaged in productive activity and represented that he would have done EBRR programing if it were available to him. *Id.* The court accepted the petitioner's representations but found that he had not demonstrated that the BOP was denying him

20

time credits to which he may be entitled, explaining as follows:

> The FSA is a relatively new law, and the Seventh Circuit has not yet addressed whether, and in what circumstances, a federal inmate can earn FSA credits before arrival at his designated BOP facility. While some courts have found that 28 C.F.R. § 523.42(a) is invalid because it conflicts with the FSA, *see Gale* [*v. Warden*, No. 24-13127], 2025 WL 223870, at *4 [E.D. Mich. Jan. 16, 2025)] (collecting cases), here the Court need not decide if the regulation is invalid. Assuming for the sake of argument that the regulation is invalid and Mr. Jackson was *eligible* to earn FSA credits on the date of his sentencing, there is no evidence that he *actually earned* any such credits before he arrived at a BOP facility. Thus, he has not demonstrated that the BOP is denying him time credits to which he may be entitled.

> The FSA mandates that FSA credits are earned only for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). And the applicable regulation states that "successful participation" in such programming requires a determination by BOP staff that the inmate participated in programming recommended by BOP staff based on his individualized risk and needs assessment. 28 C.F.R. § 523.41(c)(2). Here, Mr. Jackson has not shown that the classes he attended or the work he did while incarcerated at a jail before his arrival at a BOP facility qualify as activities recommended by BOP staff based on his risks and needs assessment. Nor does he argue that the regulation defining "successful participation" in EBRR or productive activities is invalid.

> Moreover, the text of the FSA supports Respondent's position that Mr. Jackson did not earn FSA credits before arriving at a BOP facility. The statute requires the BOP to develop a system that would be used to determine the recidivism risk of each inmate "as part of the intake process," determine the type and amount of EBRR appropriate for each inmate, assign the inmate to such programming after considering his criminogenic needs, and reassign the inmate to appropriate EBRR or productive activities when his recidivism risk level is reassessed. 18 U.S.C. § 3632(a)(1), (3), (4). The entire process of assigning EBRRs and productive activities that can then be completed to earn FSA credits is tied to completion of the recidivism risk assessment, which, by statute, cannot occur until intake into the BOP.

> Here, Mr. Jackson participated in classes and worked as an orderly at the county jail before the BOP intake process. As a result, even if he was eligible to earn FSA credits starting on the date of his sentencing, he has not shown that he actually earned any such credits before he arrived at a BOP facility. *See Freeman v. Lillard*, No. 3:24-cv-02227-GCS, 2025 WL 1358556, at *3 & n.1 (S.D. Ill. May 9, 2025) (declining to decide whether § 523.42(a) is invalid because there was no evidence that the petitioner successfully completed EBRR or productive activities before he arrived at a BOP facility and noting that he could not have done so because the BOP did not conduct an assessment determining appropriate programming until he came into BOP custody).

*Id.* at *5–6.

Within the Fourth Circuit, a court in the Northern District of West Virginia similarly concluded that although the "petitioner assert[ed] that 'he was of good behavior, did not commit any disciplinary infractions, never refused to participate in any programs, and participated in programs and productive activities available to him,' he [was] unable to show that he in fact 'successfully participated'" in programming after sentencing while he was in USMS custody either in a local jail or in holdover status. *Dane v. Bayless*, No. 5:24-CV-157, 2024 WL 5150683, at *5 (N.D.W. Va. Nov. 20, 2024), *report and recommendation adopted,* No. 5:24-CV-157, 2024 WL 5150650 (N.D.W. Va. Dec. 17, 2024). Although the court "found that the BOP's [regulatory] definition of when a sentence 'commences' is in conflict with the plain language of the FSA," *id.* at *3,[8] the court found that because "the BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for petitioner until he arrived at his designated facility, . . . [the] petitioner could not, in fact, successfully participate in programming," *id.* at *5. The *Dane* court explained that the statutory provisions of the FSA supported this conclusion:

> Petitioner's argument ignores the FSA requirement that an [adult in custody, ("AIC")] be assessed for the risk of recidivism "as part of the intake process." [18 U.S.C.] §§ 3621(h)(1)(A), 3632(a)(1) (the BOP must "determine the risk of recidivism of each prisoner as part of the intake process"). BOP must then

---

[8] The *Dane* court joined what appears to be a growing consensus among district courts that the BOP's regulatory definition of when a sentence "commences" is in conflict with the plain language of the FSA. The FSA states that a prisoner may not earn credits for a program completed "prior to the date that the prisoner's sentence commences under section 3585(a)." *See* 18 U.S.C. § 3632(d)(4)(B)(ii). Section 3585(a), in turn, provides that a sentence commences on the date the prisoner "is received into custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." *See* 18 U.S.C. § 3585(a). However, a BOP regulation provides a narrower definition of "commences": "An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served)." 28 C.F.R. § 523.42(a). The undersigned agrees with *Dane* that "while the [BOP's] policy conflicts with the statute insofar as it defines 'commencement of sentence' more narrowly than the statute, . . . this does not mean the prisoner is entitled to an award of FSA time credit on the date he is received in federal custody." 2024 WL 5150683, at *4.

"determine the type and amount of [EBRR] programming that is appropriate" for each AIC and "assign" appropriate EBRR programming and PAs based on its assessment of the AIC's "specific criminogenic needs." *Id.* § 3632(a)(3); *see also id.* § 3621(h)(1)(A). BOP must also try to "tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism." *Id.* § 3632(b)(2). As a practical matter, BOP cannot complete a comprehensive risk and needs assessment on the day of sentencing.

Second, the application of FSA time credits is expressly conditioned on an AIC's "successful participation" in EBRR programming. *See id.* § 3632(d)(4)(A) (authorizing the application of time credits in exchange for "successful completion" or "successful participation in evidence-based recidivism reduction programming or productive activities"). . . . [T]he FSA authorizes an award of time credits only if an AIC earns them by participating in EBRR programs.

*Id.* at *4–5 (quoting *Stevens v. Jacquez*, No. 3:23-CV-01482-AA, 2024 WL 3200546, at *4 (D. Or. June 25, 2024)).

The undersigned finds persuasive the reasoning of the *Jackson* and *Dane* courts.[9] Here, although Petitioner has produced evidence that he worked as an orderly and participated in various

---

[9] Neither party identified a case where the Fourth Circuit has addressed whether, and in what circumstances, a federal inmate can earn FSA credits before arrival at his designated BOP facility, and the undersigned is not aware of any such case. As Petitioner and Respondent note, courts outside the Fourth Circuit are split on whether a petitioner may earn credits starting at the time of sentencing. *See* ECF No. 25 at 13–14 (collecting cases); ECF No. 28 at 25–38; *see, e.g.*, *Harris v. Warden, FCI-Leavenworth*, No. 25-3006-JWL, 2025 WL 1067634, at *1–2 (D. Kan. Apr. 9, 2025) (collecting cases and describing split). However, "[m]any courts that have ruled in favor of prisoners on this issue considered only validity of the BOP regulation, without considering [the FSA's] other requirements." *Harris*, 2025 WL 1067634, at *2. The undersigned finds more persuasive the line of cases from courts, like *Dane* and *Jackson*, that considered the FSA's other statutory requirements for the earning of time credits and concluded that a petitioner could not successfully participate in programming until after the BOP had conducted its assessment to determine the type and amount of programming appropriate for the petitioner. *See, e.g.*, *Harris*, 2025 WL 1067634, at *2 (denying petition where petitioner asserted that, while he was in USMS custody for the seven months following his sentencing, he held a job as an orderly and completed a survey necessary for the eventual participation in FSA programming, and explaining that petitioner could not have successfully completed EBRR programming or productive activities for which he could earn credits because his risk of recidivism had not yet been assessed and he had not yet been assigned any appropriate programming); *Akhatsegbe v. Greene*, No. 1:24-CV-01871, 2025 WL 297699, at *4 n.5 (M.D. Pa. Jan. 24, 2025) ("It does not appear that Akhatsegbe could have participated in programming because the BOP did not conduct its assessment to determine the type and amount of appropriate programming for him until he reached FCI Allenwood.").

programs and other activities while he was in USMS custody after his sentencing, he has not demonstrated that the BOP had conducted an assessment to determine the type and amount of programming appropriate for Petitioner at that time. Instead, the evidence in the record indicates that the BOP conducted such an assessment only after Petitioner arrived at his designated BOP facility in June 2024. On this record, Petitioner has not shown that he is entitled to FSA time credit for the period prior to arriving at FCI-Bennettsville. Accordingly, should the Court reach the merits of the Petition, the undersigned recommends that the Petition be denied.

### IV.     <u>RECOMMENDATION</u>

For the reasons set forth above, it is **RECOMMENDED** that Petitioner's Motion to Strike (ECF No. 30) be **DENIED**, that Respondent's Motion for Summary Judgment (ECF No. 25) be **GRANTED**, and that the Petition be **DISMISSED** without prejudice.

Molly H. Cherry
United States Magistrate Judge

July 3, 2025
Charleston, South Carolina

**<u>The parties are directed to the next page for their rights to file objections to this recommendation.</u>**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).